## NORTH BRITISH & MERCANTILE INS. CO. v. H. BAARS & CO.

(Circuit Court of Appeals, Fifth Circuit.   January 20, 1919.)

No. 3294.

1. INSURANCE ☞314—MARINE INSURANCE—DEVIATION—ABANDONMENT.

An intended deviation from the voyage described in a policy will not avoid the policy, where loss occurred before the point of deviation was reached; but it is avoided by an abandonment of the voyage, although the vessel was still on the intended course.

2. INSURANCE ☞314—MARINE INSURANCE—DEVIATION FROM VOYAGE.

Plaintiff chartered a steamship, then in London, for a voyage from a Gulf port to Europe, and insured the profits of the voyage with defendant, including war risks.  Owing to war conditions and the requirement of the British authorities, the vessel was to proceed first to Algiers, and on leaving there was to stop at Huelva, Spain, for cargo for New Orleans, which was the ultimate destination of the voyage, for delivery under the charter.  Shortly after leaving England she was sunk by a submarine, although on a course advised as safer than a direct one to the Gulf.  *Held*, that the intended course by way of Algiers and Huelva was connected with the ultimate voyage, and was not a deviation which invalidated the policy.

In Error to the District Court of the United States for the Northern District of Florida; Wm. B. Sheppard, Judge.

Action at law by H. Baars & Co., a corporation, against the North British & Mercantile Insurance Company.  Judgment for plaintiff, and defendant brings error.  Affirmed.

Francis B. Carter, of Pensacola, Fla., and Oscar R. Houston, of New York City, for plaintiff in error.

Wm. H. Watson and S. Pasco, Jr., both of Pensacola, Fla., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge.  This was an action at law, instituted on a marine policy of insurance, covering the anticipated profits of a voyage of the steamship Gamen under a charter party with the defendants in error, who were plaintiffs in the District Court.  The vessel was sunk by a submarine about 35 miles west southwest off the Scilly Islands, while on its way to Algiers.  The marine policy included war risks, and insured the profits of the future voyage which the vessel was chartered to make to a European port after its arrival at a Gulf port in the United States.  The plaintiff in error defended the action upon two theories.  The first was that the vessel had abandoned the voyage for which she was insured, prior to the time of her loss, and that for that reason the insurance did not attach.  The second was that there was a concealment of material information from the insurer, of which the insured or its agents and brokers were in possession before the policy was written.

[1] The solution of the first question depends upon whether the Gamen had abandoned the voyage from London to a Gulf port in the United States before she was lost. The facts are not seriously in dispute. The owners had, before the vessel reached London, entered into a charter with the defendants in error for the future voyage from a Gulf port in this country to a European port. By its terms she was required to report to the charterers at a port on the Gulf of Mexico, between October 1st and November 25th, for the future voyage. She was sunk on September 8, 1916. Shortly before that time she had sailed from London for Barry, in Wales, to get bunker coal for the voyage across the Atlantic. Her master knew of the charter she was required to fill for the defendants in error on leaving London, but, up to the time of the loss of the vessel, had not received orders from his owners to proceed further than Algiers. One reason for her voyage from Barry to Algiers was that the British authorities at Barry refused to supply the vessel with bunker coal, "unless the steamer carried an intermediate outward cargo for the benefit of Great Britain or her Allies in the present war." The vessel had also been chartered for a voyage from Algiers to Huelva, a port on the Mediterranean in Spain, to take on a cargo of ore, for delivery at New Orleans. The master was to receive orders to sail to Huelva, upon his arrival at Algiers. The ship was sunk while on a course different from the ordinary course pursued from Barry to an American Gulf port before the war.

The undisputed evidence is to the effect, however, that she was then pursuing the safest course, though not the quickest or most direct, to an American Gulf port, in view of the greater danger from submarines, if she adopted the usual prewar course, which did not hug the English coast so close, and was pursuing the one advised by the British admiralty, and generally adopted since the war. The policy sued on permitted deviations of the vessel from the voyage described, provided the deviations were communicated to the insurer as soon as known to the assured, and an additional premium paid, if required. It is conceded that the deviation in this case was not known to the insured until after the loss of the vessel, and that no additional premium had been required to be paid by it. It also appears that there was no actual deviation up to the time of the loss, as the route pursued up to that time was the common route to Algiers and to an American Gulf port. An intended deviation, to be accomplished thereafter, would not avoid the insurance. An abandonment of the voyage insured would, however, avoid the policy, since it was not permitted by the policy, and this would be true, though the loss occurred while the vessel was still on the common course and before it had reached the point of divergence.

[2] The District Judge charged the jury that an abandonment of the insured voyage was necessary to avoid the insurance, and that if there was no departure upon the part of the owners from the time the vessel left London from the intended voyage to an American Gulf port, and if the ports in the Mediterranean were to be called at on a voyage, the ultimate destination of which was a port in the Gulf of Mexico, then the voyages to Barry and to the Mediterranean ports were deviations merely, and did not avoid the policy. The correctness of this

portion of the charge presents the question. In the case of Marine Insurance Company v. Tucker, 3 Cranch, 357, the Supreme Court made the identity of the ultimate destination of the insured and the actual voyage the determining factor as to whether or not the voyage had been abandoned. Each justice wrote a separate opinion, and all concurred in this view.

The plaintiff in error dissents from the principle that identity of termini should be determinative, and insists that the intermediate voyage must also be connected with and subordinate to the insured voyage. If that be conceded to be a correct limitation on the rule announced in the case cited, we are of the opinion that the facts, without dispute, showed that the voyages to Barry and Algiers, and to Huelva, were all connected with the insured voyage from London to a Gulf port, in the sense that would prevent any or all of them from constituting an abandonment of it. The purpose of the voyage to Barry was to get bunker coal for the voyage across the Atlantic. It is conceded that this was at most a deviation. The record shows that the ship could procure bunker coal at Barry only by agreeing to carry an intermediate outward cargo for the benefit of Great Britain or her Allies. She carried a cargo of coal to Algiers for that purpose. If it was necessary for her to proceed to Barry to get bunker coal, it was necessary for her to go where the British authorities required her to go as a condition of being furnished such coal. The fair inference from the record is that she was making the voyage to Algiers in response to this requirement, at least partly. If it was partly made upon the demand of the British authorities, that would supply the necessary connection between it and the insured voyage. The contemplated voyage from Algiers to Huelva was for the purpose of loading ore at the latter port for New Orleans, which is a port covered by the description of the terminus for the insured voyage. Departing from Algiers on the insured voyage, she had to pass through the straits of Gibraltar.

We do not think that her stopping at the port of Huelva, on the south coast of Spain, to secure cargo for the insured voyage, was an abandonment of the insured voyage, or was an entirely separate and unconnected voyage from it. She was not required to sail in ballast at the risk of being held otherwise to have abandoned the insured voyage, provided the intention to make a Gulf port in the United States, her ultimate destination, remained that of her owners. The District Judge left it to the jury to determine whether this intention on the part of her owners did remain up to the time of the loss. The evidence is persuasive that it did. The Gamen took on bunker coal at Barry in sufficient quantity to make the insured voyage. She was insured by her owners for a round-trip voyage to a Gulf of Mexico port. She was to take cargo at Huelva for such a port. Her charter with defendants in error required her to be in a Gulf of Mexico port between October 1st and November 25th. The mere fact that her master had orders, on leaving Barry, which controlled him only to Algiers, is not persuasive to the contrary, since it is undisputed she was to go thence at least to Huelva, under charter requirement, and when it is

also considered that her master knew of the necessity of being in a Gulf of Mexico port before November 25th.

Our conclusion is that, whether or not identical termini always make identical voyages, in this case the voyages to Barry, to Algiers, and to Huelva are all shown by the record to have been connected with the insured voyage, so that, if the Gamen was intended ultimately by her owners to have been sent to a Gulf port in the United States, they, singly or together, did not constitute an abandonment of the insured voyage. The jury found that such was the owner's intention, on evidence amply justifying the finding.

The second ground of defense against a recovery on the policy was that there had been a concealment of material information from the insurer, which the insured, through its agents, was in possession of before the policy was issued. The information alleged to have been suppressed was that the Gamen would probably carry a cargo of coal to the Western or Azores Islands, and stop there for that purpose. It admits of doubt from the record that the agents of the insured had any specific information to that effect of a character that the law would require them to disclose to the insurer. It would seem to have been a mere probability, based on custom, and not actual information as to the specific voyage. However this may be, the District Judge left this question to the jury under proper instructions, and the jury found against the plaintiff in error upon it.

There are many assignments of error relied upon in the briefs of counsel for plaintiff in error, but not orally argued. Our examination of them has disclosed none which we think constitutes reversible error. We think the issues were fairly presented to the jury, and that the judgment should be, and it is, ordered affirmed, with costs.

Affirmed.